UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ERIC ROSA,

    Defendant.

Case No. 20-CR-30-13-JPS

**ORDER**

1. **BACKGROUND**

On June 14, 2023, Defendant Eric Rosa ("Defendant") filed his first motion for compassionate release. ECF No. 1100. In his first motion, he sought compassionate release on the basis of "a combination of extraordinary and compelling reasons, including (1) family circumstances, (2) the increased punitive nature of his incarceration during the pandemic, (3) his health risk of severe complication and death from Covid-19, and (4) his rehabilitation and post-sentencing conduct." ECF No. 1132 at 1–2 (quoting ECF No. 1100 at 1). The Court denied the motion on August 10, 2023, finding that Defendant failed to proffer an extraordinary and compelling basis for compassionate release and that, even if he had, the Court's application of the 18 U.S.C. § 3553(a) sentencing factors counseled against early release. *Id.* at 7.

On December 11, 2023, Defendant filed his second motion for compassionate release. ECF No. 1141. In his second motion, he seeks compassionate release due to his "November 17th, 2023 heart attack and subsequent immediate lack of care f[ro]m prison officials." *Id.* at 11. Because Defendant's second motion is based on a change in circumstances from the

time of his first motion, the Court set a briefing schedule on the motion. ECF No. 1145. Following an extension of time to obtain all relevant medical records, ECF Nos. 1147, 1148, the Government filed a response to Defendant's motion, ECF No. 1150.[1] Defendant has not filed a reply brief, either within the time set under the Court's briefing schedule or at all. ECF Nos. 1145, 1148 (setting a reply brief deadline of twenty-one days from the Government's response). Thus, the Court considers the motion ripe for review. For the reasons described below, the Court will deny Defendant's motion.

2.  **LEGAL STANDARD**

The Court can modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf" or thirty days after the warden at the defendant's facility has received such a request for release, "whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). There must be "extraordinary and compelling reasons warrant[ing] such a reduction." *Id.* § 3582(c)(1)(A)(i).

Section 3582(c)(1)(A) instructs that a reduction must also be "consistent with applicable policy statements issued by the [United States] Sentencing Commission." In 2020, the Seventh Circuit held that the relevant policy statement, U.S.S.G. § 1B1.13, is inapplicable to prisoner-initiated motions for compassionate release. *United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners. In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to [a

---

[1]The Court will grant the Government's motion to seal its response and Defendant's attached medical records. ECF No. 1149.

prisoner's] request."). Therefore, because there was no applicable policy statement, the Seventh Circuit explained that courts have discretion when determining what constitutes an "extraordinary and compelling" reason warranting compassionate release. *Id.* ("[T]he trailing paragraph of § 3582(c)(1)(A) does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement.").

However, November 1, 2023 amendments to § 1B1.13 clarify that, in addition to "expand[ing] the list of specified extraordinary and compelling reasons that can warrant sentence reductions," "the applicability of the policy statement [is extended] to defendant-filed motions . . . ." United States Sentencing Commission, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* (eff. Nov. 1, 2023) at 7, *available at* https://perma.cc/P7TS-LMXQ (last visited Mar. 27, 2024). Thus, it appears that the Seventh Circuit's prior determination of inapplicability of the policy statement will change. Nonetheless, the distinction is ultimately academic. Courts retain discretion under the "catchall" provision of § 1B1.13 to find "any other circumstance or combination of circumstances" that are "similar in gravity" to those specifically enumerated in § 1B1.13 to be extraordinary and compelling bases for release. *Id.* at 3 (§ 1B1.13(b)(5) ("catchall" provision)); *id.* at 7 (explaining purpose of "catchall" provision).

Prior to modifying a term of imprisonment, the Court must also consider the sentencing factors set forth in § 3553(a), if applicable. 18 U.S.C. § 3582(c)(1)(A).

3. **FACTS**

In 2021, Defendant pled guilty to one count of an Indictment charging him with conspiracy to distribute and possess with intent to

distribute at least five kilograms of cocaine in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A). ECF Nos. 669, 708. On February 11, 2022, the Court sentenced Defendant to 120 months of imprisonment, to be followed by a five-year term of supervised release. ECF No. 745. Defendant elected not to appeal his judgment and conviction. ECF No. 737.

As noted, Defendant seeks compassionate release on the basis of his November 17, 2023 heart attack. ECF No. 1141 at 11. He alleges that he received "no care whatsoever" following the heart attack, and that as of the filing of his second motion, he had not been seen by a cardiologist or an outside medical doctor. *Id.* He contends that his preexisting health issues of fatty liver disease, hepatitis, high blood pressure, anxiety, and depression, combined with the heart attack and the November 1, 2023 amendments to U.S.S.G. § 1B1.13, make him "a prime candidate for immediate release to home confinement." *Id.* at 12.

With respect to the § 3553(a) factors, Defendant represents that he is remorseful and that he is not a danger to society. *Id.* He claims that he possesses a "minimum" risk of recidivism. *Id.* at 12–13. He asserts that he has completed fourteen months of his 120-month sentence without any disciplinary infractions. *Id.* He has also finished nearly twenty rehabilitation programs and "practically every good conduct time" possible. *Id.* at 13. Finally, he notes that releasing him due to his heart attack will not diminish deterrence or respect for the law. *Id.*[2]

---

[2]In passing, Defendant contends that compassionate release is warranted because he has "zero points history." *Id.* at 1, 14. However, as the Government notes, ECF No. 1150 at 2 n.1, Amendment 821 is inapplicable to Defendant "because of the operation of . . . a statutory mandatory minimum term of imprisonment" under 21 U.S.C. § 841(b)(1)(A). United States Sentencing Commission, *Amendment to the Sentencing Guidelines: Retroactive Application of Parts*

4. **ANALYSIS**

   4.1 **Exhaustion**

As a threshold matter, the Government submits that Defendant has not exhausted his instant basis for compassionate release—his November 17, 2023 heart attack—by filing a request relating thereto with his warden. ECF No. 1150 at 6–7. "[T]he exhaustion requirement is a mandatory claim-processing rule and therefore *must* be enforced when properly invoked." *United States v. Sanford*, 986 F.3d 779, 782 (7th Cir. 2021). Because the Government "properly invoked [Defendant's] failure to comply with § 3582(c)(1)(A)'s exhaustion requirement," and Defendant has not refuted the Government's challenge to his failure to exhaust, Defendant's motion must be denied for this reason alone. *Id.*

   4.2 **Extraordinary and Compelling Reasons**

Even if Defendant had exhausted the issue of his November 17, 2023 heart attack, neither the heart attack nor Defendant's ensuing medical issues and treatment are extraordinary and compelling reasons warranting early release.

Defendant's medical records show that on November 17, 2023, while at his institution, he had a "syncopal episode with questionable seizure," hit his head, and was brought to an external hospital emergency department. ECF No. 1150-1 at 373, 384. When he arrived at the emergency department, Defendant was "completely awake[,] alert[,] and oriented, not confused," and no seizure activity was noted. *Id.* at 373. However, he complained of left-sided chest pain with radiation to his left shoulder. *Id.*

---

*A and B, Subpart 1 of Amendment 821* (Aug. 31, 2023, eff. Nov. 1, 2023) at 5, *available at* https://perma.cc/Z9EY-EQ97 (last visited Mar. 27, 2024); *see also* ECF No. 745.

He was admitted to the external hospital for further cardiac evaluation and he was treated by a cardiologist. *Id.* at 373, 51. Treatment notes indicate that doctors evaluated whether a cardiac event caused the syncopal episode, completed a chest x-ray, completed an EKG which "showed normal sinus rhythm with no acute ST segment changes or ectopy," and completed "[c]ardiac catheterization, [a] coronary angiogram, and [an] LV gram." *Id.* at 378, 382, 386 388–89, 395, 402. Doctors' preoperative diagnosis was "[c]hest pain, elevated troponin consistent with acute non-ST elevation myocardial infarction," and their conclusion was that "[n]o significant coronary artery stenosis was noted," Defendant could "be treated medically from [a] coronary standpoint," and that his "chest pain . . . could have been related to drug use." *Id.* at 390, 401, 446; *see also id.* at 372 (same). Defendant's discharge notes ultimately showed that he had experienced a non-ST elevation myocardial infarction or "NSTEMI," to be treated medically. *Id.* at 50, 372.

Defendant was discharged on November 20, 2023, during which hospital staff observed that he was "in no pain or distress," and he returned to his institution with new medication orders, and perhaps also stents. *Id.* at 373, 47, 46 (noting "no stents placed"); *but see id.* at 47 (noting "stents placed"). He was again observed at his institution to be "stable, ambulatory, and in no acute distress." *Id.* at 45. He was seen at his institution one day later and denied chest pain, although he reported discomfort to his left ribcage and shortness of breath with exertion. *Id.* at 43. On November 29, 2023, he was again seen and denied chest pain, though he again reported left ribcage pain from his fall. *Id.* at 40, 43, 369. He was administered a chest x-ray, *id.* at 42, which indicated fractures to his ribs but "no acute cardiopulmonary process," *id.* at 37.

On December 24, 2023, Defendant experienced facial swelling, which institution medical staff diagnosed as a possible allergic reaction. *Id.* at 35, 30. He was placed in special housing for monitoring. *Id.* at 30. When his symptoms did not improve, he was transferred the same day to an external hospital. *Id.* at 29. At the hospital, he was intubated and sedated, and doctors noted that they believed that the reaction was due to an allergy to the medication lisinopril, which Defendant had been prescribed upon his prior discharge. *Id.* at 26, 372.

On December 26, 2023, medical records indicate that Defendant continued to be heavily sedated and "on the vent" at the hospital with significant facial swelling. *Id.* at 23. From December 27, 2023 through December 29, 2023, hospital staff attempted to extubate Defendant but were unable to do so. *Id.* at 20–22. By December 30, 2023, however, Defendant was noted to be "awake and eating." *Id.* at 18. And by January 2, 2024, Defendant had been switched to oral antibiotics and was "ambulating without difficulty." *Id.* at 17. The next day, he was discharged back to his institution with instructions to avoid lisinopril due to his allergic reaction, along with a note to see an allergy specialist. *Id.* at 15. One week later, Defendant was admitted to special housing at his institution for drinking alcohol. *Id.* at 1, 4.

As pertinent here, the November 1, 2023 amendments to § 1B1.13 prescribe that an extraordinary and compelling reason for release may exist when the defendant suffers from: (1) a "terminal illness" such as metastatic solid-tumor cancer, ALS, end-stage organ disease, and advanced dementia; (2) a serious physical or medical condition "that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he . . . is not expected to recover"; or

(3) a medical condition "that requires long-term or specialized medical care that is not being provided and without which the defendant is at risk of serious deterioration in health or death." United States Sentencing Commission, *Amendments to the Sentencing Guidelines, Policy Statements, Official Commentary, and Statutory Index* (eff. Nov. 1, 2023) at 1–2, *available at* https://perma.cc/P7TS-LMXQ (last visited Mar. 27, 2024).

Contrary to Defendant's assertions, his medical records show that he has been treated by a cardiologist, outside medical specialists, and institution medical specialists. Far from being incapable of treating him, BOP medical staff and outside medical staff have administered regular and thorough medical care to Defendant, leaving him pain free and able to comfortably ambulate after each medical encounter and/or prior to discharge. *See, e.g., United States v. Rigney*, No. 18-30002, 2022 WL 3756673, at *2 (C.D. Ill. Aug. 30, 2022) (no extraordinary and compelling circumstances where medical care—including EKG and echocardiogram—was sufficient to diagnose, treat, and keep under control heart attack and heart conditions). And apart from his allergic reaction to his medication, which was treated, Defendant has not had further medical issues resulting from the NSTEMI. Indeed, Defendant has felt well enough to drink alcohol. Simply put, Defendant's medical records do not show that his NSTEMI is terminal, substantially diminishes his ability to provide self-care, or has been left untreated. Nothing else in the record indicates that an unenumerated or "catchall" basis for compassionate release is present. *See supra* Section 2. For all these reasons, Defendant has failed to proffer an extraordinary and compelling basis for compassionate release.

### 4.3 The § 3553(a) Factors

Having determined that Defendant has not presented an extraordinary and compelling reason warranting compassionate release, the Court is not required to consider the § 3553(a) factors. *See United States v. Thacker*, 4 F.4th 569, 576 (7th Cir. 2021) ("*Upon a finding* that the prisoner has supplied [an "extraordinary and compelling"] reason, the second step of the analysis requires the district court, in exercising the discretion conferred by the compassionate release statute, to consider any applicable sentencing factors in § 3553(a) . . . ." (emphasis added)).

However, even if Defendant had properly exhausted his administrative remedies and demonstrated an extraordinary or compelling reason, the Court's application of the sentencing factors to Defendant counsels against compassionate release for the same reasons that the Court described in its order on Defendant's first motion for compassionate release. ECF No. 1132 at 8–9. The passage of time has not altered the Court's prior findings, and the Court adds only the following to that analysis.

Defendant, though he asserted in his second compassionate release motion that he has had no disciplinary infractions, has since been moved to special housing for drinking alcohol in prison. ECF No. 1150-1 at 1, 4. Defendant is in prison for a drug crime, and he represented at the time of sentencing "that his health issues were due in part to his lifestyle of heavy use of cocaine and alcohol." ECF No. 1132 at 8 (citing ECF No. 726 at 19). Defendant's hospital medical records indicate that his NSTEMI may have been due to drug use. Defendant's continued substance use in prison suggests that if he were to be released, he would engage in potentially even more harmful substance use. The custodial setting, which provides

programming and treatment, is the safest place for Defendant at this juncture given his history of substance use.

5. **CONCLUSION**

Defendant has neither exhausted his administrative remedies nor proffered an extraordinary and compelling reason warranting a reduced sentence. Moreover, the § 3553(a) factors do not support compassionate release at this juncture. Therefore, the Court will deny Defendant's second motion for compassionate release.

Accordingly,

**IT IS ORDERED** that the Government's motion to seal, ECF No. 1149, be and the same is hereby **GRANTED**; the document docketed at ECF No. 1150, and its attachments, shall remain under seal pending further order of the Court; and

**IT IS FURTHER ORDERED** that Defendant Eric Rosa's second motion for compassionate release, ECF No. 1141, be and the same is hereby **DENIED**.

Dated at Milwaukee, Wisconsin, this 27th day of March, 2024.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge